FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 APR 16 AM 8:35



# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                    Respondent,

v.

ONELIO CARDONA-HERNANDEZ,

                    Appellant.

No. 76074-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: April 16, 2018

LEACH, J. — Onelio Cardona-Hernandez appeals the high-end standard range sentence and conditions of community custody the trial court imposed after his conviction for second degree rape. He claims that the sentence was a "penalty" that violates his Fifth Amendment right against self-incrimination.[1] Because Cardona-Hernandez voluntarily spoke at his sentencing and the sentence falls within the standard range, we affirm the trial court. Because a condition prohibiting Cardona-Hernandez from entering sex-related businesses is not sufficiently related to his conviction, we remand to strike the condition and otherwise affirm.

## BACKGROUND

The trial court convicted Cardona-Hernandez of rape in the second degree and two counts of burglary in the first degree with sexual motivation. Cardona-

---

[1] U.S. CONST. amend. V.

Hernandez also pleaded guilty to a reduced charge of criminal trespass in the first degree with sexual motivation.

At sentencing, Cardona-Hernandez faced a standard range for the rape conviction of 146 to 194 months. For the two counts of burglary, he faced a standard range of 57 to 75 months. The State recommended the high end of the standard range for the rape conviction. At the sentencing hearing, the trial court told Cardona-Hernandez that he had the right of allocution but that he also had the "absolute right to say nothing." Cardona-Hernandez chose to speak. He explained that he refused to plead guilty and take a plea offer because he was innocent.

After Cardona-Hernandez's statement, the trial court imposed the high-end term, 194 months, for the second degree rape. The trial court considered a number of factors before deciding to impose the high-end term. These included (1) the defense's argument of lack of relative force, (2) the nature of the crime, including exploiting his employer for the purpose of victimizing, (3) the nature of the crime scene (located in the University District which is a place of freedom and innocence where the defendant undoubtedly observed vulnerability), (4) the vulnerability of the victim given her infirmity, and (5) "the defendant's apparent lack of remorse and choice here rather than to apologize, to use this as an opportunity to cross-examine one of his rape victims."

The trial court sentenced Cardona-Hernandez to 66 months on the two counts of burglary, concurrent with his sentence for the rape count. The trial court also imposed lifetime community custody after Cardona-Hernandez's release.

Cardona-Hernandez appeals.

## ANALYSIS

### Standard Range Sentence

Cardona-Hernandez challenges the standard sentence range for the rape conviction. Under the Sentencing Reform Act of 1981 (SRA),[2] a criminal defendant generally may not appeal the imposition of the standard sentence range.[3] But a defendant may appeal a standard range sentence when a sentencing court does not comply with procedural requirements of the SRA or constitutional requirements.[4]

Cardona-Hernandez contends that the trial court violated his Fifth Amendment right against self-incrimination by considering his "remorseless" allocution when imposing the high end of the standard range sentence. The Fifth Amendment prevents a person from being "compelled in any criminal case to be a witness against himself."[5] A defendant may assert the right against self-incrimination in any proceeding, "civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings."[6] This includes a sentencing hearing.[7]

---

[2] Ch. 9.94 RCW.

[3] RCW 9.94A.585(1).

[4] State v. Osman, 157 Wn.2d 474, 481-82, 139 P.3d 334 (2006).

[5] U.S. CONST. amend. V; see McKune v. Lile, 536 U.S. 24, 35, 122 S. Ct. 2017, 153 L. Ed. 2d 47 (2002).

[6] Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973).

[7] See Mitchell v. United States, 526 U.S. 314, 325-27, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999).

But no one compelled Cardona-Hernandez to speak. The trial court told Cardona-Hernandez that he had the right to allocution and the right to remain silent. The judge's advice eliminates any claim of any compulsion to self-incrimination.[8] Cardona-Hernandez chose to speak after the court told him he could remain silent. By choosing to speak, he waived his Fifth Amendment right.

"Trial courts may not use a defendant's silence or continued denial of guilt as a basis for justifying an exceptional sentence."[9] Here, the parties concede that no Washington case law directly addresses the issue of whether a court can consider a denial of guilt when imposing a standard range sentence. Cardona-Hernandez relies on a Montana decision, State v. Shreves.[10] There, the defendant maintained his innocence throughout the trial and chose to remain silent during sentencing.[11] The trial court imposed the 100-year sentence recommended by the State.[12] The trial court imposed this sentence in large part due to the defendant's lack of remorse and equated the defendant's silence to a lack of remorse.[13] The Montana Supreme Court held that the trial court "improperly penalized Shreves for maintaining his innocence pursuant to his constitutional right to remain silent."[14] But the court also made clear that a trial court can consider a defendant's lack of

---

[8] United States v. Washington, 431 U.S. 181, 188, 97 S. Ct. 1814, 52 L. Ed. 2d 238 (1977) (stating when a respondent was explicitly advised of the right to remain silent, "This advice also eliminated any possible compulsion to self-incrimination which might otherwise exist.").

[9] State v. Garibay, 67 Wn. App. 773, 782, 841 P.2d 49 (1992).

[10] 2002 MT 333, 313 Mont. 252, 60 P.3d 991.

[11] Shreves, 2002 MT 333, ¶ 6.

[12] Shreves, 2002 MT 333, ¶ 3.

[13] Shreves, 2002 MT 333, ¶ 20.

[14] Shreves, 2002 MT 333, ¶ 20.

remorse during pretrial, at trial, or posttrial as a sentencing factor.[15] But the court prohibited a sentencing court from drawing "a negative inference of lack of remorse from the defendant's silence at sentencing where he has maintained, throughout the proceedings, that he did not commit the offense of which he stands convicted."[16]

We distinguish Shreves. Cardona-Hernandez did not remain silent at sentencing. So the trial court did not penalize him by drawing an impermissible inference from his silence. Cardona-Hernandez cites no authority for the proposition that the trial court must ignore the content of his allocution statement when imposing sentence. Once Cardona-Hernandez chose to speak, the Fifth Amendment did not require that the trial court ignore what he had to say.

For an additional reason to affirm, the State relies on United States v. Klotz,[17] where the Seventh Circuit Court of Appeals established that a sentence within the federal sentencing guidelines is not presumed to be a penalty. The defendant in Klotz wanted the court to set the lower limit as the benchmark and to find a higher sentence within the range as a penalty.[18] The "range itself is the apt starting point, and choices within the range cannot readily be assigned particular causes."[19] The court stated it was proper to impose a sentence which was near the upper limit of the guidelines range, based in part on the refusal of the defendant

---

[15] Shreves, 2002 MT 333, ¶ 21.
[16] Shreves, 2002 MT 333, ¶ 22.
[17] 943 F.2d 707, 710-11 (7th Cir. 1991).
[18] Klotz, 943 F.2d at 710.
[19] Klotz, 943 F.2d at 710.

to assist authorities in investigations, and did not penalize the defendant for exercising his constitutional right to remain silent.[20] Because we conclude that no Fifth Amendment violation occurred, we do not address the State's argument.

Community Custody Conditions

Cardona-Hernandez challenges three conditions of community custody. He claims that the trial court exceeded its statutory authority by imposing one condition that is not crime related and two that are unconstitutionally vague. This Court reviews the trial court's statutory authority to impose community custody conditions de novo.[21]

### (1)    Crime Related

Cardona-Hernandez contends that condition 10 should be stricken because the condition is unrelated to the offense of his conviction.[22] Condition 10 states, "Do not enter sex-related businesses, including: X-rated movies, adult bookstores, strip clubs, and any location where the primary source of business is related to sexually explicit material." A trial court has the authority to impose "crime-related prohibitions" as a condition of community custody.[23] The SRA defines crime-related prohibition as "an order of the court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted."[24]

---

[20] Klotz, 943 F.2d at 710-11.
[21] State v. Johnson, 180 Wn. App. 318, 325, 327 P.3d 704 (2014).
[22] Cardona-Hernandez did not challenge the community conditions below, but defendants may challenge erroneous sentences for the first time on appeal. State v. Bahl, 164 Wn.2d 739, 744, 193 P.3d 678 (2008).
[23] RCW 9.94A.703(3)(f).
[24] RCW 9.94A.030(10).

"'Directly related' includes conditions that are 'reasonably related' to the crime."[25] "This court reviews the factual bases for crime-related conditions under a 'substantial evidence' standard."[26] "Community custody conditions are 'usually upheld if reasonably crime related.'"[27]

The State relies on State v. Magana[28] to show that the trial court properly imposed condition 10 as a condition reasonably related to Cardona-Hernandez's conviction for sex offenses. In Magana, the court held that the community conditions prohibiting access to X-rated movies, adult book stores, and sexually explicit materials were crime related because the defendant was convicted of a sex offense.[29] But, in State v. Norris,[30] this court disagreed with Magana to the degree the decision "stands for either a categorical approach or the broad proposition that a sex offense conviction alone justifies imposition of a crime-related prohibition." "As previously noted, there must be some evidence supporting a nexus between the crime and the condition."[31]

Here, the State identifies no evidence showing a nexus between Cardona-Hernandez's crimes and frequenting sex-related businesses. In the absence of

---

[25] State v. Irwin, 191 Wn. App. 644, 656, 364 P.3d 830 (2015) (citing State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (2014)).

[26] Irwin, 191 Wn. App. at 656.

[27] State v. Norris, 1 Wn. App. 2d 87, 97, 404 P.3d 83 (2017) (quoting State v. Warren, 165 Wn. 2d. 17, 32, 195 P.3d 940 (2008)), review granted, No. 95274-4 (Wash. Mar. 7, 2018).

[28] 197 Wn. App. 189, 389 P.3d 654 (2016).

[29] Magana, 197 Wn. App. at 201.

[30] 1 Wn. App. 2d 87, 98, 404 P.3d 83 (2017), review granted, No. 95274-4 (Wash. Mar. 7, 2018).

[31] Norris, 1 Wn. App. 2d at 98.

any evidence showing that frequenting sex-related businesses contributed to Cardona-Hernandez's convictions, the trial court exceeded its authority by imposing condition 10.

(2) Vagueness

Cardona-Hernandez contends that condition 5, regarding dating relationships, and condition 11, regarding sexually explicit material and conduct, are unconstitutionally vague. Under the Fourteenth Amendment to the United States Constitution and article I, section 3 of the Washington Constitution, citizens have the right to fair warning of proscribed conduct.[32] A community custody condition is unconstitutionally vague if it (1) does not define the prohibited conduct with sufficient definiteness that ordinary people can understand what conduct is proscribed or (2) does not provide ascertainable standards to protect against arbitrary enforcement.[33] A community custody condition is unconstitutionally vague if it does not meet either of these requirements.[34]

The court considers the context of the term to determine whether the term is unconstitutionally vague.[35] When a statute does not define a term, the court may consider the plain and ordinary meaning from a standard dictionary.[36] A community custody condition is sufficiently definite "[i]f 'persons of ordinary

---

[32] Bahl, 164 Wn.2d at 752 (citing City of Spokane v. Douglass, 115 Wn.2d 171, 178, 795 P.2d 693 (1990)).

[33] Bahl, 164 Wn.2d at 752-53 (quoting Douglass, 115 Wn.2d at 178).

[34] Bahl, 164 Wn.2d at 752-53.

[35] Bahl, 164 Wn.2d at 754 (citing Douglass, 115 Wn.2d at 180).

[36] Bahl, 164 Wn.2d at 754 (citing State v. Sullivan, 143 Wn.2d 162, 184-85, 19 P.3d 1012 (2001)).

intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement.'"[37]

Cardona-Hernandez contends condition 5, which requires him to inform the CCO and sexual deviancy treatment provider of "any dating relationship," is unconstitutionally vague. Condition 5 states, "Inform the supervising CCO and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such."

Cardona-Hernandez contends that this condition does not give adequate notice of how to avoid a sanction and does not prevent arbitrary enforcement. Cardona-Hernandez cites a federal case, United States v. Reeves,[38] as support for his argument. But recently, in Norris, this court held that the term "dating relationship" is easily distinguishable from the condition reviewed in Reeves.[39] This court concluded that "[t]he requirement to report a 'dating relationship' does not contain highly subjective qualifiers like 'significant' and 'romantic.'"[40] Therefore, the condition in Norris was "neither unconstitutionally vague nor subject to arbitrary enforcement."[41] Our decision in Norris controls. Condition 5 is not unconstitutionally vague.

---

[37] Bahl, 164 Wn.2d at 754 (second alteration in original) (quoting Douglass, 115 Wn.2d at 179).

[38] 591 F.3d 77 (2d Cir. 2010).

[39] Norris, 1 Wn. App. 2d at 94-95.

[40] Norris, 1 Wn. App. 2d at 95.

[41] Norris, 1 Wn. App. 2d at 95.

Cardona-Hernandez also contends that condition 11 is unconstitutionally vague. Condition 11 states, "Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider."

Cardona-Hernandez notes that this condition implicates materials protected by the First Amendment. When a community custody condition involves material having First Amendment protection, a vague condition can have a chilling effect on the exercise of First Amendment rights.[42] Any restriction on protected materials that a defendant may access or possess must be clear and "must be reasonably necessary to accomplish essential state needs and public order."[43] "Thus, conditions may be imposed that restrict free speech rights if reasonably necessary, but they must be sensitively imposed."[44]

Cardona-Hernandez relies on State v. Bahl,[45] where our Supreme Court found a condition restricting access to pornography unconstitutionally vague. Cardona-Hernandez correctly notes that this condition did not define pornography or reference the term in another statute.[46] But the same court found lawful a

[42] Bahl, 164 Wn.2d at 753.
[43] Bahl, 164 Wn.2d at 757-58.
[44] Bahl, 164 Wn.2d at 757.
[45] 164 Wn.2d 739, 743, 193 P.3d 678 (2008).
[46] Bahl, 164 Wn.2d at 743.

condition prohibiting the defendant from frequenting establishments whose primary business pertains to sexually explicit or erotic material.[47]

Because this condition did not define "sexually explicit" or "erotic," the court looked to dictionary definitions and statutory definitions to help it assess whether the conditions was impermissibly vague.[48] The court did not decide whether the definition alone would provide sufficient notice to overcome a vagueness challenge.[49] But the court stated that the available definition "bolsters our conclusion that 'sexually explicit,' in the context used, is not unconstitutionally vague."[50] Similarly, the statutory definitions referred to in condition 11 support the conclusion that "sexually explicit material," "erotic material," and "sexually explicit conduct" are not unconstitutionally vague.[51]

Unlike the condition upheld in Bahl, condition 11 incorporates statutory definitions. With these definitions, an ordinary person would understand the conduct proscribed. Also, the condition contains explicit standards for its application. Thus, we conclude condition 11 is not unconstitutionally vague.

## NEW JUDGE REQUEST

Cardona-Hernandez also requests assignment to a new judge for resentencing. A party may seek reassignment for the first time on appeal where the judge will exercise discretion on remand regarding the very issue that triggered

---

[47] Bahl, 164 Wn.2d at 759.
[48] Bahl, 164 Wn.2d at 759.
[49] Bahl, 164 Wn.2d at 760.
[50] Bahl, 164 Wn.2d at 760.
[51] See Soundgarden v. Eikenberry, 123 Wn.2d 750, 758-59, 871 P.2d 1050 (1994) (finding the term "erotic" under RCW 9.68.050 not unconstitutionally vague).

the appeal.[52] But this remedy is limited, and reassignment is not generally available because the appellate opinion may offer sufficient guidance to effectively limit trial court discretion on remand.[53] Because we conclude that the trial court did not err in sentencing Cardona-Hernandez and remand for the limited purpose of striking one community custody condition, we deny Cardona-Hernandez's request.

## STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Cardona-Hernandez raises several additional grounds for review. None of his claims have merit.

## Jury Instructions

Cardona-Hernandez challenges three of the court's instructions to the jury. We review challenged jury instructions de novo.[54]

*Consent*

First, Cardona-Hernandez challenges the court's instruction that "[c]onsent means that at the time of the act of sexual intercourse there are actual words or conduct indicating freely given agreement to have sexual intercourse." He claims that this instruction improperly shifted the burden of proof. The due process clause of the Fourteenth Amendment to the United States Constitution requires the State to prove every element of a crime beyond a reasonable doubt.[55] Instructing the

---

[52] State v. Solis-Diaz, 187 Wn.2d 535, 539-40, 387 P.3d 703 (2017).
[53] Solis-Diaz, 187 Wn.2d at 539-40.
[54] State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995).
[55] State v. W.R., 181 Wn.2d 757, 762, 336 P.3d 1134 (2014).

jury in a manner that relieves the State of this burden is reversible error.[56]  Our Supreme Court has held that consent negates the element of forcible compulsion of second degree rape.[57]  Thus, a court violates a defendant's due process rights when it requires the defendant to prove consent by a preponderance of evidence.[58]  But, here, the instructions did not improperly shift the burden of proof.  The case that Cardona-Hernandez relies on, State v. W.R.,[59] involves the former version of WPIC 18.25,[60] which did shift the burden.  But, unlike in W.R., the court's instructions here did not place the burden of showing lack of consent on the defendant.  The court instructed the jury that the State had the burden to show that the victim was incapable of consent by reason of being physically helpless.  The court properly instructed the jury that the State had to prove each element of rape in the second degree beyond a reasonable doubt.

*Knowingly Entered*

Cardona-Hernandez also challenges the trial court's elements instruction for residential burglary.  He specifically contends that the court erred by omitting an element that he "knowingly entered" a dwelling.  Failure to instruct the jury on every element of a crime is reversible error because such an error relieves the State of its burden to prove every element beyond a reasonable doubt.[61]  "A person

---

[56] Pirtle, 127 Wn. 2d at 656.
[57] W.R., 181 Wn.2d at 763.
[58] W.R., 181 Wn.2d at 762-63.
[59] 181 Wn.2d 757, 336 P.3d 1134 (2014).
[60] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.25, at 288 (3d ed. 2008).
[61] State v. Byrd, 125 Wn.2d 707, 713-14, 887 P.2d 396 (1995).

is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle."[62] Here, the trial court gave the statutory elements of the offense for burglary in the first degree.[63] Knowing entry is not an element of burglary in the first degree.[64] The court's instruction was proper.

*Comment on the Evidence*

Next, Cardona-Hernandez challenges this limiting instruction:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence relates to uncharged, alleged victims [E.R., C.H., E.S., and K.S.]. This evidence may be considered by you only for the purposes of knowledge, opportunity, and considering whether the defendant's alleged conduct is part of a common scheme or plan for each count. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

Cardona-Hernandez contends that this instruction is an improper comment on the evidence. Under article IV, section 16 of the Washington Constitution, judges may not comment to the jury on matters of fact or convey to the jury his or her opinion about the testimony.[65] Here, the court's instruction does not assume any facts have been established by the evidence. It merely limits the jury's use of some evidence. We reject Cardona-Hernandez's contention.

---

[62] RCW 9A.52.025(1).
[63] RCW 9A.52.025(1).
[64] RCW 9A.52.025.
[65] State v. Dewey, 93 Wn. App. 50, 58-59, 966 P.2d 414 (1998).

## Hearsay

Next, Cardona-Hernandez contends that the court improperly admitted a hearsay statement in K.L.'s deposition testimony. Cardona-Hernandez does not identify the challenged statement in the record. We are not obligated to search the record in support of his claim.[66]

## Sufficiency of Evidence

Cardona-Hernandez contends that the evidence was insufficient to convict him of count 4, first degree burglary with sexual motivation, for his conduct with respect to K.L. We review challenges to the sufficiency of the evidence de novo.[67] When reviewing the sufficiency of evidence, we view the evidence in the light most favorable to the State and ask whether any rational finder of fact could have found guilt beyond a reasonable doubt.[68] To convict Cardona-Hernandez of burglary in the first degree, the State must prove that he acted with intent to commit a crime against a person or property therein, entered or remained unlawfully in a building and, while in the building or in immediate flight therefrom, he was armed with a deadly weapon or assaulted any person.[69]

Cardona-Hernandez first contends that the identification by K.L. is insufficient to show he was the person who assaulted her; although she picked him from a montage, she was unable to identify him for certain in the courtroom. The

---

[66] RAP 10.10(c).

[67] State v. Merritt, 200 Wn. App. 398, 408, 402 P.3d 862 (2017), review granted in part, 189 Wn.2d 1039 (2018).

[68] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[69] RCW 9A.52.020.

Seattle Police Department had K.L. identify the person who assaulted her out of a montage of six photographs. K.L. picked out Cardona-Hernandez. She later stated that she did not recognize the defendant in the courtroom but believed that was due to the length of time since the incident. Notwithstanding K.L.'s later uncertainty, the trier of fact could reasonably find that K.L.'s initial identification was sufficient to prove that Cardona-Hernandez assaulted K.L.[70]

Cardona-Hernandez also contends that he did not assault any person. The court instructed the jury that "[a]n assault is an intentional touching of another person that is harmful or offensive regardless of whether any physical injury is done to the person." Here, K.L. testified that the next thing she remembered after falling asleep was someone spooning her from behind, kissing her neck, and groping her breast. She later identified Cardona-Hernandez as that person. Thus, the record contains sufficient evidence that he assaulted K.L.

<u>Prosecutorial Misconduct</u>

Cardona-Hernandez contends that prosecutorial misconduct during closing arguments deprived him of a fair trial. To establish prosecutorial misconduct, Cardona-Hernandez must show the prosecutor's comments were "'both improper and prejudicial in the context of the entire record and the circumstances at trial.'"[71] Cardona-Hernandez has the burden to prove that "'there is a substantial likelihood

---

[70] Cardona-Hernandez also points out that there is no DNA evidence to link him to count 4. But evidence of K.L.'s identification is sufficient to link him to the crime.

[71] <u>State v. Thorgerson</u>, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (internal quotation marks omitted) (quoting <u>State v. Magers</u>, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

[that] the instances of misconduct affected the jury's verdict.'"[72] We review allegations of prosecutorial misconduct under an abuse of discretion standard.[73]

Cardona-Hernandez contends that a comment made by the State during closing arguments bolstered the witnesses' credibility and mischaracterized the role of the jury. The prosecution stated,

> With respect to [K.L.] and [C.R.], I suspect the primary issue will be identity. Was it the defendant who came into [C.R.]'s house? Was it the defendant who was spooning [K.L.] and kissing her neck? I suggest to you that even if all you had was the testimony of [S.M.] and [C.R.] and [K.L.], the DNA results, and the montage picks of [C.R.] and [K.L.], that would be more than sufficient evidence for you to find the defendant guilty as charged in counts three and four.

The defense objected. The court overruled the objection but reminded the jurors "that the lawyer's arguments are not themselves evidence and that the law is defined by the court in its instruction to the jury." Assuming the court improperly overruled this objection, Cardona-Hernandez cannot show prejudice. The court followed this sole incident of claimed misconduct with a curative comment. There is not a substantial likelihood that the comment affected the jury's verdict.

### Motion to Suppress and Sever

Finally, Cardona-Hernandez contends that the trial court abused its discretion because it did not grant the motion to suppress and the motion to sever. But defendants must, at the least, inform the court of the nature of the claimed error.[74] Because Cardona-Hernandez does not, we do not consider this claim.

---

[72] Magers, 164 Wn.2d at 191 (alteration in original) (quoting Pirtle, 127 Wn.2d at 672).

[73] Thorgerson, 172 Wn.2d at 460.

[74] RAP 10.10(c).

## CONCLUSION

We remand to strike condition 10 and otherwise affirm Cardona-Hernandez's sentence.

_Leach, J._

WE CONCUR:

_Mann, ACJ_                    _Dwyer, J._